IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STATE FARM FIRE & CASUALTY, an Illinois Corporation, | ) ) ) ) | CV. NO. 09-00532 DAE-LEK |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| DAVID CABATBAT, BRENDA CABATBAT, and COLLIN CABATBAT, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER: (1) GRANTING STATE FARM'S MOTION FOR
SUMMARY JUDGMENT; (2) DENYING THE CABATBATS'
MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing. After reviewing the motions and the supporting and

opposing memoranda, the Court GRANTS State Farm's Motion for Summary

Judgment (Doc. # 28) and DENIES the Cabatbats' Motion for Summary Judgment

(Doc. # 31).

BACKGROUND

This is an insurance coverage action, brought to determine the rights

and obligations of Plaintiff State Farm Fire & Casualty Co. ("State Farm") and

Defendants David Cabatbat ("David"), Brenda Cabatbat ("Brenda"), and Collin Cabatbat ("Collin") (collectively, the "Cabatbats") with regard to a Hawaii state court lawsuit. The Court repeats the background facts only as is necessary for a decision on the Motions for Summary Judgment. The essential facts of this case are not in dispute.

I.    The Underlying Lawsuit

On December 21, 2007, Brenda Cabatbat, as Next Friend for Collin Cabatbat, filed a lawsuit in Hawaii state court against Barry Curtis ("Curtis"), University of Hawaii Hilo, and various Doe defendants, captioned <u>Brenda Cabatbat v. Barry Curtis et al.</u>, Circuit Court for the Third Circuit of Hawaii, Civil No. 07-1-0418 (the "Underlying Lawsuit"). (Pl. CSOF Ex. 1.) On November 20, 2008, Collin, who had apparently reached the age of majority, filed a First Amended Complaint in the Underlying Lawsuit, suing in his own right. (Pl. CSOF Ex. 2.) On December 12, 2008, Curtis filed an Answer to the First Amended Complaint; Counterclaim Against Collin Cabatbat; Second Amended Third-Party Complaint Against Third-Party Defendants Brenda Cabatbat and David Cabatbat. (Pl. CSOF Ex. 3.)

The Underlying Lawsuit involves an incident that occurred between Collin and Curtis in early 2007. Collin was a minor at the time of the incident, and

he was living with his parents Brenda and David, whose home is next to Curtis's residence.  (Pl. CSOF Ex. 3, Countercl. ¶¶ 2–3.)  On January 21, 2007, Curtis alleges that he saw Collin walking a dog back and forth in front of Curtis's house for several minutes.  (Id. ¶ 5.)  Curtis represents that during this time, he walked out of his home and into his driveway where he continued observing Collin.  (Id. ¶ 6.)  After seeing Curtis on the driveway, Collin allegedly yelled "What" at Curtis several times.  (Id. ¶ 7.)  Curtis claims that he then walked over to Collin and informed him that if his dog came onto Curtis's property again, Curtis would report the dog to the Humane Society.  (Id. ¶ 8.)  Collin then allegedly yelled at Curtis in a threatening way, at which point Curtis went back inside his home.  (Id. ¶¶ 9–10.)  Curtis asserts that, for the next ten minutes, Collin "walked up and down the length of the street in front of Curtis'[s] home yelling and screaming . . . obscenities and slurs at Curtis."  (Id. ¶ 11.)

On January 28, 2007, Curtis claims that he sent a letter to Brenda and David, Collin's parents, describing the events that took place on January 21, 2007 and informing them that if Collin acted in that way again, Curtis would file criminal and civil claims against both Collin and his parents.  (Id. ¶ 15.)  Brenda and David purportedly did not respond to this letter.  (Id. ¶ 17.)

Thereafter, Curtis, a Professor of Philosophy at the University of Hawaii Hilo, mailed a letter dated April 23, 2007 to the principal of Waiakea High School, which Collin attended. (Pl. CSOF Ex. 2.) The letter was typed on University of Hawaii Hilo letterhead and describes the January 21, 2007 incident between Collin and Curtis. (Id.) Collin denies that he engaged in the January 21, 2007 conduct as depicted by Curtis. (Id. ¶ 14.)

Collin's First Amended Complaint against Curtis alleges that Curtis's letter to Waiakea High School was false, defamatory, and placed Collin in a false light. (Id. ¶¶ 12–21.) Collin also asserted claims against Curtis for intentional infliction of emotional distress and negligent infliction of emotional distress. (Id. ¶¶ 22–23.) Curtis, in turn, filed a Counterclaim against Collin, premised upon the January 21, 2007 incident, for intentional infliction of emotional distress, negligent infliction of emotional distress, and slander. (Pl. CSOF Ex. 3, Countercl. ¶¶ 18–25.) Curtis also filed a Second Amended Third-Party Complaint against Brenda and David, alleging that they are liable for Collin's tortious acts committed while he was a minor, pursuant to Hawaii Revised Statute § 577-3, and asserting claims for intentional infliction of emotional distress, negligent infliction of emotional distress, slander, negligent supervision, and indemnity for any liability that Curtis may have under Collin's First Amended Complaint. (Pl. CSOF Ex. 3,

SATPC ¶¶ 4, 19–33.)  The Cabatbats have tendered their defense of these claims against them to State Farm.  (Compl. ¶ 33.)

II.   The Policy

State Farm issued a Homeowners Policy to the Cabatbats, Policy Number 51-BH-1906-2, with a relevant policy period from September 1, 2006 to September 1, 2007 (the "Policy").  ("Policy," Pl. CSOF Ex. 4.)  The Policy insured the Cabatbat's residence at 15-1692 21st Ave., Keaau, Hawaii, 96749 and includes the following relevant provisions:

**DEFINITIONS**

"You" and "your" mean the "named insured" shown in the **Declarations**.  Your spouse is included if a resident of your household.  "We," "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1.      "**bodily injury**" means physical injury, sickness or disease to a person.  This includes required care, loss of services and death resulting therefrom.

**Bodily injury** does not include:

. . . .

c.      emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

. . . .

4.       **"insured"** means you and, if residents of your household:

       a.       your relatives; and

       b.       any other person under the age of 21 who is in the care of a person described above.

. . . .

7.       "**occurrence**," when used in Section II of this Policy, means an accident, including exposure to conditions, which results in:

       a.       **bodily injury**; or

       b.       **property damage**;

       during the policy period.  Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

8.       "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

. . . .

## SECTION II - LIABILITY COVERAGES

## COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1.  pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2.  provide a defense at our expense by counsel of our choice.  We may make any investigation and settle any claim or suit that we decide is appropriate.  Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence** equals our limit of liability.

. . . .

## SECTION II - EXCLUSIONS

1.  Coverage L and Coverage M do not apply to:

    a.  **bodily injury** or **property damage**:

        (1)  which is either expected or intended by the **insured**; or

        (2)  which is the result of willful and malicious acts of the **insured**[.]

. . . .

(Policy at 1–2, 15–16.)

III.  <u>Procedural History</u>

On November 5, 2009, State Farm filed a Complaint for Declaratory Judgment asking this Court to find that it has no duty to defend or indemnify the Cabatbats under the Policy for Curtis's claims against them in the Underlying Lawsuit.  ("Compl.," Doc. # 1.)  On November 22, 2010, State Farm filed a Motion

for Summary Judgment ("Pl. MSJ," Doc. # 28) and a Concise Statement of Facts in support of its Motion ("Pl. CSOF," Doc. # 29). On January 10, 2011, the Cabatbats filed a Motion for Summary Judgment ("Defs. MSJ," Doc. # 31) and a Concise Statement of Facts in support of their Motion ("Defs. CSOF," Doc. # 32). State Farm filed a Reply on January 17, 2011 ("Pl. MSJ Reply," Doc. # 34) and a Supplemental Declaration on February 2, 2011 ("Pl. Supp. Decl.," Doc. # 36). The Cabatbats filed a Reply on January 31, 2011. ("Defs. MSJ Reply," Doc. # 35.)

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. Before granting summary judgment, however, a non-moving party must have a "'full and fair opportunity to ventilate the issues [related to] the . . . claims.'"

Norse v. City of Santa Cruz, --- F.3d ---, 2010 WL 5097749, at *3 (9th Cir. Dec. 15, 2010) (quoting Greene v. Solano Cnty. Jail, 513 F.3d 982, 990 (9th Cir. 2008)).

A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). This assertion must be supported by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials," or by demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter,

419 F.3d at 891 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  <u>S. Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  <u>T.W. Elec. Serv.</u>, 809 F.2d at 630 (quoting <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  <u>Addisu</u>, 198 F.3d at 1134.  Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."  <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002) (citing <u>Kennedy v. Applause, Inc.</u>, 90 F.3d 1477, 1481 (9th Cir. 1996)).  "Conclusory allegations unsupported by factual data cannot defeat summary judgment."  <u>Rivera v. Nat'l R.R. Passenger Corp.</u>, 331 F.3d 1074, 1078 (9th Cir. 2003).  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, a court may either give

the party an opportunity to support or address the fact, consider the fact undisputed for purposes of the motion and grant or deny summary judgment accordingly, or issue any other appropriate order. Fed. R. Civ. P. 56(e).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id.; see also Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted). However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

For the reasons set forth below, the Court concludes that State Farm is entitled to summary judgment on the Complaint. As such, State Farm's Motion for

Summary Judgment is granted and the Cabatbats' Motion for Summary Judgment is denied.

I.  <u>Hawaii Insurance Coverage Law</u>

State law governs the resolution of substantive issues in this diversity action.  <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938); <u>Snead v. Metro. Prop. & Cas. Ins. Co.</u>, 237 F.3d 1080, 1090 (9th Cir. 2001).  When interpreting state law, a federal court is bound by the decisions of a state's highest court.  <u>Ariz. Elec. Power Coop. v. Berkeley</u>, 59 F.3d 988, 991 (9th Cir. 1995).  In the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  <u>Id.</u>; <u>see also</u> <u>Burlington Ins. Co. v. Oceanic Design & Constr., Inc.</u>, 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." (quotation and brackets omitted)).

Insurance policies are subject to the general rules of contract construction.  <u>Dawes v. First Ins. Co. of Haw., Ltd.</u>, 883 P.2d 38, 42 (Haw. 1994).  Under Hawaii law, construction of a contract, where material facts are undisputed, is a question of law for the court.  <u>See</u> <u>Nat'l Union Fire Ins. Co. v. Reynolds</u>, 889

P.2d 67, 71 (Haw. App. 1995); <u>Cho Mark Oriental Food v. K & K Int'l</u>, 836 P.2d

1057, 1064 (Haw. 1992). Thus, summary judgment is appropriate when a court

determines, as a matter of law, that the terms of an insurance policy do not provide

coverage. <u>See</u> <u>Crawley v. State Farm Mut. Auto. Ins. Co.</u>, 979 P.2d 74, 78 (Haw.

App. 1999); <u>Foote v. Royal Ins. Co. of Am.</u>, 962 P.2d 1004, 1008 (Haw. 1998).

   The terms of insurance policies must be interpreted according to their

plain, ordinary, and accepted sense in common speech, unless it appears from the

language of the policies that a different meaning is intended. <u>Nat'l Union</u>, 889

P.2d at 71. Insurance polices are contracts of adhesion and must be construed

liberally in favor of the insured and any ambiguities must be resolved against the

insurer. <u>Tri-S Corp. v. W. World Ins. Co.</u>, 135 P.3d 82, 98 (Haw. 2006) (citation

omitted). Additionally, insurance policies must be construed in accord with the

reasonable expectations of a layperson. <u>Id.</u>

   An "[a]mbiguity exists . . . only when the [policy] taken as a whole, is

reasonably subject to differing interpretation. Absent an ambiguity, the terms of

the policy should be interpreted according to their plain, ordinary, and accepted

sense in common speech . . . ." <u>Oahu Transit Services, Inc. v. Northfield Ins. Co.</u>,

112 P.3d 717, 722 n.7 (Haw. 2005) (brackets in original) (citation omitted). When

interpreting insurance policies, courts should look to the entirety of their terms and

conditions.  AIG Haw. Ins. Co. v. Estate of Caraang, 851 P.2d 321, 326 (Haw. 1993).

      "'[L]iability insurers have the same rights as individuals to limit their liability, and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy.'" Liberty Mut. Ins. Co. v. Sentinel Ins. Co., Ltd., 205 P.3d 596, 614–15 (Haw. App. 2009) (quoting First Ins. Co. of Haw. v. State, 665 P.2d 648, 655 (Haw. 1983)). The burden is on the insured to establish coverage under an insurance policy.  See Sentinel Ins. Co. v. First Ins. Co. of Haw., 875 P.2d 894, 909 n.13 (Haw. 1994). The insurer has the burden of establishing the applicability of an exclusion.  See id. at 914.

      The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion."  Dairy Rd. Partners v. Island Ins. Co. Ltd., 992 P.2d 93, 108 (Haw. 2000).  "[T]he obligation of an insurer to defend its insured is separate and distinct from an insurer's obligation to pay a judgment against its insured."  First Ins., 665 P.2d at 416–17.  An insurer's duty to defend is contractual in nature, and courts "must look to the language of the particular policy involved to determine the scope of that duty."  Commerce & Indus. Ins. Co. v. Bank of Haw.,

832 P.2d 733, 735 (Haw. 1992) (citation omitted).  Under Hawaii insurance law, the duty to defend arises whenever there is a potential for indemnification liability from the insurer to the insured.  Hawaiian Holiday Macadamia Nut Co. v. Indust. Indem. Co., 872 P.2d 230, 233 (Haw. 1994); see also Burlington, 383 F.3d at 944. The duty to defend is thus much broader than the duty to indemnify and does not depend on whether liability is ultimately established.  Commerce, 832 P.2d at 735. Under the "complaint allegation rule," the duty to defend is determined at the time that the defense is tendered to the insurer or the insurer otherwise is on notice that a complaint has been filed against its insured.  See, e.g., Dairy Rd. Partners, 992 P.2d at 108–16; Commerce, 832 P.2d at 735; Pancakes of Haw., Inc. v. Pomare Props. Corp., 944 P.2d 83, 88 (Haw. App. 1997).  For the duty to defend to arise, the potential insured need only show that the underlying claim may fall within policy coverage.  Dairy Rd. Partners, 992 P.2d at 108–16 (emphasis added).

Where the pleadings fail to allege any basis for recovery within the coverage of the subject policy, the insurer has no obligation to defend.  Hawaiian Holiday, 872 P.2d at 233.  In determining whether coverage exists under a liability policy, Hawaii courts do not look at the way a litigant states a claim, but rather at the underlying facts alleged in the pleadings.  See Oahu Transit Servs., 112 P.3d at 721; Bayudan v. Tradewind Ins. Co., 957 P.2d 1061, 1069 (Haw. App. 1998).

15

II.    <u>The Policy</u>

The Policy provides insurance coverage for claims made or suits brought against an insured for "damages because of **bodily injury** or **property damage** . . . caused by an **occurrence**." (Policy at 15.)

The Underlying Lawsuit does not involve "bodily injury." The Policy defines "bodily injury" as "physical injury, sickness, or disease to a person," but excludes from coverage "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury <u>unless it arises out of actual physical injury</u> to some person." (Policy at 1 (emphasis added).) None of Curtis's claims or allegations in the Underlying Lawsuit assert that he suffered any manner of physical injury. Rather, Curtis contends that he was "shocked and dismayed" by Collin's behavior on January 21, 2007, and that this incident left him "fearful of being verbally and/or physically assaulted by [Collin], and fearful that [Curtis's] home would be vandalized by [Collin] whenever Curtis left his home for any length of time." (Pl. CSOF Ex. 3, Countercl. ¶¶ 5–17.) These facts show that Curtis was fearful of physical injury, not that such injury took place. Indeed, none of the facts alleged indicate that there was any physical contact between Curtis and Collin, let alone physical injury. To the extent that Curtis alleges he suffered

emotional distress from the January 21, 2007 incident, this does not constitute "bodily injury" because it did not "arise[] out of a physical injury to some person."

The Cabatbats set forth an alternative interpretation of the Policy, utilizing Curtis's deposition and interrogatory responses in the Underlying Lawsuit (see Defs. CSOF Exs. A, B), which indicate that Curtis is also suffering from anxiety and depression as a result of the January 21, 2007 incident. (Defs. MSJ at 13.) According to the Cabatbats, depression and anxiety are not expressly excluded from "bodily injury" by the Policy's requirement that "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury" are not covered "unless [they] arise[] out of actual physical injury to some person." (Id.) The Cabatbats then assert that the definition of "bodily injury" under the Policy—"physical injury, sickness, or disease"—only requires that an injury be physical, but because physical does not modify sickness or disease, to be included in bodily injury, sickness or disease need not be physical. (Id. at 13–14.) Therefore, the Cabatbats contend that because Curtis's alleged depression and anxiety both constitute mental sickness or disease, they are included in "bodily injury" under the Policy. (Id.) This suggested interpretation belies the Policy's plain and unambiguous language. Depression and anxiety quite clearly fall into the Policy's limitation that "emotional distress, mental anguish, humiliation, mental

distress, mental injury, <u>or any similar injury</u>" are excluded from coverage "unless [they] arise[] out of actual physical injury to some person." (<u>See</u> Policy at 1 (emphasis added).) Although depression and anxiety are not expressly enumerated in this list of conditions, they are similar to those conditions and are thus subject to the limitation that they must arise from a physical injury to be covered. This Court will not contort the language in the Policy, as the Cabatbats urge, to create an ambiguity where none exists.

  The Cabatbats rely on several cases, all of which are inapposite, to support their argument that Curtis's claims in the Underlying Lawsuit allege "bodily injury." Aside from the fact that none of these cases constitute binding precedent, they are all readily distinguishable from the instant case. First, the Cabatbats rely on the Missouri Court of Appeal's decision in <u>Lanigan v. Snowden</u>, 938 S.W.2d 330, 332 (Mo. Ct. App. 1997), which found that the term "bodily injury" in an insurance policy, defined as "bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time," was ambiguous as to whether the terms "sickness" and "disease" could include damages for mental harm. (Defs. MSJ at 9–10.) Because of the ambiguity, the court construed the policy as providing coverage for the mental harm. <u>Lanigan</u>, 938 S.W.2d at 333. Contrary to the policy in <u>Lanigan</u>, the Policy here expressly

excludes from the definition of bodily injury "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person." (Policy at 1.) Because of this, the Lanigan court's reasoning does not apply to the instant case.

The Cabatbats next urge the Court to follow Derousse v. State Farm Mutual Automobile Insurance Co., 298 S.W.3d 891 (Mo. 2009) (en banc). (Defs. MSJ at 10–12.) In Derousse, the Missouri Supreme Court concluded that Missouri's uninsured motorist statute, which required insurance coverage for "bodily injury, sickness or disease, including death, resulting therefrom," was ambiguous as to whether it included coverage for emotional harm. Derousse, 298 S.W.3d at 894–95. The Derousse court then applied rules of statutory construction to conclude that the insured's emotional harm was compensable under the statute as a "sickness" or "disease." Id. at 895. As with Lanigan, Derousse is also distinguishable from the case at bar because the statutory language in Derousse did not exclude "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person." (Policy at 1.) Derousse is simply not relevant to this Court's interpretation of the Policy at issue.

Next, the Cabatbats rely on <u>Doyle v. Engelke</u>, 580 N.W.2d 245, 250 (Wis. 1998) to support their contention that "emotional conditions [are included] under a bodily injury definition employing sickness or disease." (Defs. MSJ at 12.) In <u>Doyle</u>, the insurance policy defined "bodily injury" as "any physical harm, including sickness or disease, to the physical health of other persons." <u>Doyle</u>, 580 N.W.2d at 249. The definition of "bodily injury" also included "mental anguish, injury or illness, emotional distress, [and] care, loss of services or death" resulting "at any time from such physical harm, sickness or disease." <u>Id.</u> Construing the allegations in the complaint liberally, the <u>Doyle</u> court concluded that emotional distress was bodily injury within the meaning of this policy. <u>Id.</u> at 249–50. However, the policy language in <u>Doyle</u> expressly <u>included</u> emotional distress resulting from a "physical harm, sickness or disease" whereas the Policy here <u>excludes</u> harm from emotional distress unless it arises out of a physical injury. Because of this, the court's ruling in <u>Doyle</u> is inapposite.

Finally, the Cabatbats cite <u>Lavanant v. General Accident Insurance Co. of America</u>, 595 N.E.2d 819 (N.Y. 1998) to assert that they had a reasonable expectation that claims "for purely mental injury would fall within their insurance coverage." (Defs. MSJ at 20.) The <u>Lavanant</u> court, interpreting an insurance policy that defined "bodily injury" as "bodily injury, sickness or disease,"

20

concluded that the term "bodily injury" was ambiguous.  <u>Lavanant</u>, 595 N.E.2d at 822–23.  The court therefore resolved the ambiguity in favor of providing coverage and concluded that the definition of "bodily injury" in the policy before it included harm caused by emotional distress.  <u>Id.</u>  Again, the court's logic and reasoning in <u>Lavanant</u> does not apply because unlike the policy in that case, here, the Policy excludes mental injuries unless they arise out of physical injury to some person.  This difference in policy language is fatal to the Cabatbat's reliance on each of these four cases.  Because Curtis's claims against the Cabatbats do not allege that Curtis suffered any physical injury or that his emotional distress, anxiety, and depression arose out of any physical injury, the Underlying Lawsuit alleges no "bodily injury" under the Policy.[1]  <u>See</u> <u>Dawes</u>, 883 P.2d at 42.

Nor does the Underlying Lawsuit allege a covered "property damage."  The Policy defines "property damage," in pertinent part, as "physical damage to or destruction of tangible property, including loss of use of this property."  (Policy at 2.)  None of Curtis's allegations in the Underlying Lawsuit, and none of the facts

---

[1] Although the Court does not cite unpublished opinions as precedent, the following cases, interpreting similar policy language, have concluded that mental injuries are not covered within the definition of "bodily injury" unless they arise out of an actual physical injury: <u>State Farm Fire & Cas. Ins. Co. v. Ramirez</u>, 2010 WL 290539, at *6 (D. Haw. Jan. 22, 2010), <u>vacated on other grounds by</u> 2010 WL 4975154 (D. Haw. Nov. 29, 2010); <u>State Farm Fire & Cas. Co. v. Chun</u>, 2007 WL 2026134, at *4–*5 (D. Haw. July 6, 2007).

giving rise to those allegations, indicate that there was any physical damage or destruction to property.  The Cabatbats, however, rely on Curtis's deposition testimony in the Underlying Lawsuit wherein he complained that the Cabatbats "allowed their dogs to deposit feces all over [Curtis's] property for a period of at least ten years."  (See Defs. CSOF Ex. B at 21.)  Based on this, the Cabatbats argue, without citation or reference to legal authority, that "feces on Curtis'[s] property is simply damage to Curtis'[s] property that is covered under the [Cabatbats'] [P]olicy."  (Defs. MSJ Reply at 5–6; see also Defs. MSJ at 14.)

This Court is not aware of any case holding that a dog's defecation on another's property is "property damage" within the meaning of an insurance policy, and the Court will not issue such a ruling here.  Curtis nowhere asserts there was physical damage or destruction to his property from the presence of the feces, and there are no facts to show that such damage ensued.  Indeed, Curtis's claims against the Cabatbats stem from Collin's alleged threatening and slanderous behavior and Brenda and David's alleged negligent supervision of Collin when he engaged in that behavior.  Although Curtis asserts in the Underlying Lawsuit that he was afraid Collin might vandalize his property, that fear never came to fruition. (See Defs. CSOF Ex. B at 21.)  The Cabatbats cannot rely on an isolated statement in a deposition transcript to establish that Curtis's claims in the Underlying

Lawsuit involve "property damage," particularly because this Court's inquiry focuses on the claims and facts contained in the pleadings. See Burlington, 383 F.3d at 944. None of Curtis's claims and allegations against the Cabatbats in the Underlying Lawsuit involve "physical damage to or destruction of tangible property, including loss of use of this property," and even if the Court were to consider the Cabatbats' alternative argument, dog feces simply is not property damage such that coverage is triggered under the Policy.

The Cabatbats next request a continuance of State Farm's Motion for Summary Judgment pursuant to Rule 56(d).[2] (Defs. MSJ at 21.) A party requesting a continuance, denial, or other order under Rule 56(d) must demonstrate: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008) (citing California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998)); Fed. R. Civ. P. 56(d). "The burden is on the party seeking additional discovery to proffer sufficient facts

---

[2] The Cabatbats actually request relief under Rule 56(f). The 2010 Amendments to Rule 56 moved the provisions of subdivision (f) to subdivision (d) without substantial change. See Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments.

to show that the evidence sought exists, and that it would prevent summary judgment." Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001); see also Tatum v. City & Cnty. of S.F., 441 F.3d 1090, 1100 (9th Cir. 2006). The moving party must also show that it was diligent in pursuing its previous discovery opportunities. See Qualls v. Blue Cross of Cal., Inc., 22 F.3d 839, 844 (9th Cir. 1994). Failing to meet this burden "is grounds for the denial" of a Rule 56(d) motion. Pfingston v. Ronan Eng. Co., 284 F.3d 999, 1005 (9th Cir. 2002).

The Cabatbats claim that because Curtis's deposition was taken prior to commencement of the instant lawsuit, and the questions asked of him did not specifically focus on the issues herein, a continuance of State Farm's Motion for Summary Judgment is justified so the Cabatbats may depose Curtis in connection with this action. (Defs. MSJ at 21.) However, the Cabatbats have already attempted to depose Curtis in this action, and U.S. District Judge Leslie E. Kobayashi granted Curtis's motion for a protective order, precluding his deposition from taking place. (Doc. # 27.) The Cabatbats offer no information to demonstrate that Curtis may now be amenable to a deposition or that the Court should reconsider its determination that a protective order was justified. The Cabatbats also have failed to comply with the requirements of Rule 56(d) because

24

they do not set forth the specific facts they hope to elicit from further discovery and how that information may preclude summary judgment here. Instead, the Cabatbats assert that Curtis's deposition must be taken so they can obtain more information about his depression and anxiety as well as the extent of the property damage allegedly caused by the Cabatbats' dogs. (Defs. MSJ Reply at 8–9.) This blanket assertion is not sufficient to satisfy the Rule 56(d) standard. Accordingly, the Cabatbats' request for a continuance is denied.

In sum, the Policy provides insurance coverage for claims made or suits brought against an insured for "damages because of **bodily injury** or **property damage** . . . caused by an **occurrence**." (Policy at 15.) Relying on the facts alleged in the Underlying Lawsuit, and interpreting the Policy's plain and unambiguous terms, the Court concludes that Curtis's claims against the Cabatbats do not involve either "bodily injury" or "property damage."[3] The Court therefore

---

[3] Because of this determination, the Court need not consider the parties' alternative arguments concerning whether the claims in the Underlying Lawsuit arise from an "occurrence" (Pl. MSJ at 15–19; Defs. MSJ at 14–17) and whether the Policy's intentional acts exclusion applies here (Pl. MSJ at 19–20; Defs. MSJ at 17–19).

concludes that State Farm owes no duties to the Cabatbats under the Policy.[4]  See Sentinel, 875 P.2d at 904.

CONCLUSION

For the reasons stated above, the Court GRANTS State Farm's Motion for Summary Judgment (Doc. # 28) and DENIES the Cabatbats' Motion for Summary Judgment (Doc. # 31).  The Clerk of the Court is hereby directed to enter judgment in favor of State Farm.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 11, 2011.



_____
David Alan Ezra
United States District Judge

State Farm Fire & Casualty Co. v. Cabatbat et al., Cv. No. 09-00532 DAE-LEK;  ORDER: (1) GRANTING STATE FARM'S MOTION FOR SUMMARY JUDGMENT; (2) DENYING THE CABATBATS' MOTION FOR SUMMARY JUDGMENT

---

[4] The Cabatbats argue in their reply that State Farm is estopped from denying coverage because it has not provided any evidence that it has reserved its right to defend the Cabatbats in the Underlying Lawsuit.  (Defs. MSJ Reply at 7–8.)  The Court will not address this argument raised for the first time on reply. Local Rule 7.4 ("Any argument raised for the first time in the reply shall be disregarded."); see also Coos Cnty. v. Kempthorne, 531 F.3d 792, 812 n.16 (9th Cir. 2008) (declining to consider an argument raised for the first time in a reply brief).